## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

WILLIAM MANNA, an individual,

   Plaintiff,

v.

              Case No. 16-CV-500-TCK-FHM

PHILLIPS 66 COMPANY, a foreign
company, and PHILLIPS 66 SEVERANCE
PAY PLAN,

   Defendant.

### PHILLIPS 66 COMPANY'S MOTION FOR SUMMARY JUDGMENT
### AND BRIEF IN SUPPORT

Steven A. Broussard, OBA #12582
HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.

320 South Boston Avenue, Suite 200
Tulsa, OK  74103-3706
Telephone:  (918) 594-0400
Facsimile:  (918) 594-0505

ATTORNEYS FOR DEFENDANT
PHILLIPS 66 COMPANY

## TABLE OF AUTHORITIES

**Page**

## CASES

*Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997) ................................................................ 11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ........................................................ 10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 256 ........................................................................... 11

*Bacchus Industr., Inc. v. Arvin Industr., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) .................... 11

*Brown v. ScriptPro, LLC,* 700 F.3d 1222, 1229 (10th Cir. 2012) ................................................ 15

*Burk v. K-Mart Corp.*, 1989 OK 22, ¶ 5, 770 P.2d 24, 26 ............................................................ 19

*Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007) ..................... 20, 22

*Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1172……………………………………………………..22
*Carter v. Pathfinder Energy Svcs., Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011) ......................... 12

*Den Hartog v. Wasatch Academy,* 129 F.3d 1076, 1085 (10th Cir. 1997) .................................... 15

*Dewitt v. Sw. Bell Tel. Co.,* 845 F.3d 1299, 1307 (10th Cir. 2017) .............................................. 16

*Doebele v. Sprint/United Management Company,* 342 F.3d 1117, 1132 (10th Cir. 2003) ................................................................................................................................... 12

*Doyal v. Oklahoma Heart, Inc.*, 213 F.3d 492, 495 (10th Cir. 2000) .......................................... 11

*Hardy v. S.F. Phosphates Ltd. Co*., 185 F.3d 1076, 1083 (10th Cir. 1999) .................................. 17

*Hilburn v. Murata Elec. N. Am., Inc.,* 181 F. 3d 1220, 1229 (11th Cir. 1990) ............................. 12

*Johnson v. Weld City*, 594 F.3d 1202, 1211 (10th Cir. 2010) ...................................................... 16

*Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir. 1995) .......................................................... 16

*Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000) ......................... 16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) .......................... 11

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973) ............................................. 15

*McDonnell-Douglas Corp. v. Campbell*, 478 F.3d at 1287 ......................................................... 21

*Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006) ................................................................................................................................... 16

*Metzler v. Fed. Home Loan Bank of Topeka,* 464 F.3d  1171 (10th Cir.) .................................... 22

*Randle v. City of Aurora*, 69 F. 3d 441, 451 (10th Cir. 1995) ..................................................... 16

*Renaud v. Wyo. Dep't of Family Servs.,* 203 F.3d 723, 732 (10th Cir. 2000) ............................. 21

*Sabourin v. Univ. of Utah*, 676 F.3d 950, 958 (10th Cir. 2012) .................................................. 20

*Sabourin v. Univ. of Utah*, 676 F.3d 961 (10th Cir. 2012) .......................................................... 21

*Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001) .................................. 16

*Simms v. Oklahoma*, 165 F.3d 1321, 1326 (10th Cir. 1999) ........................................................ 11

*Smith v. Diffee Ford-Lincoln-Mercury, Inc*., 298 F.3d 955, 959 (10th Cir. 2002) ..................... 20

*Smothers v. Solvay Chems., Inc.,* 740 F.3d 530, 539-40 (10th Cir. 2014) ................................... 15

*Sorensen v. Univ. of Utah Hosp.,* 194 F. 3d 1084, 1087 (10th Cir. 1999) ................................... 12

*St. Mary's Honor Ctr. V. Hicks,* 509 U.S. 502, 506-07 (1993) ................................................... 16

*Wolfe v. Postmaster Gen.*, 488 F. App'x 465, 468 (11th Cir. 2012) ........................................... 12

*Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006)............................................. 17

## STATUTES

§ 12102(1)(C)........................................................................................................................... 12, 13

29 U.S.C. § 2615(a)(1)................................................................................................................ 20

29 U.S.C. § 2615(a)(2)................................................................................................................ 21

40 O.S. § 563(A) ........................................................................................................................ 18

42 U.S.C. § 12102(1)(A).............................................................................................................. 12
42 U.S.C. § 12102(1)(C)……………………………………………………………………12,13

42 U.S.C. § 12102(3)(B) ............................................................................................................. 13

42 U.S.C. §§12102(1), 12102(3)(A) ........................................................................................... 12

42 U.S.C. 12102(1)(B) ................................................................................................................ 12

## RULES

29 CFR 825.113(a)...................................................................................................................... 20

Fed. R. Civ. P. 56(a) ................................................................................................................... 10

Fed. R. Civ. P. 56(c)(1)(A) .................................................................................................... 10, 11

Fed. R. Civ. P. 56(c)(1)(B) ......................................................................................................... 10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

WILLIAM MANNA, an individual,

        Plaintiff,

v.                                                                          Case No. 16-CV-500-TCK-FHM

PHILLIPS 66 COMPANY, a foreign
company, and PHILLIPS 66 SEVERANCE
PAY PLAN,

        Defendant.

## PHILLIPS 66 COMPANY'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Defendant Phillips 66 Company ("Phillips 66") hereby moves for summary judgment in its favor and against Plaintiff, William Manna ("Manna" or "Plaintiff"), as to all claims set forth in Plaintiff's First Amended Complaint and Demand for Jury Trial (the "Amended Complaint")[1]. In support of this motion, Phillips 66 states as follows:

Plaintiff, a former Phillips 66 employee who was discharged from employment on August 6, 2015, has alleged that he was terminated in violation of the Americans with Disabilities Act (the "ADA") because of a perceived disability, a record of impairment and because of his association with a family member who allegedly has a disability. *See ¶¶ 5.2, 5.3 & 6.2, the Amended Complaint*. Although he did not test positive for drugs or alcohol during his employment with Phillips 66, Plaintiff also claims that he was dismissed in violation of the Oklahoma Standards for Workplace Drug and Alcohol Testing Act (the "Oklahoma Testing Act"). *¶¶ 7.5 & 7.6, the Amended Complaint*. Finally, Plaintiff claims that Phillips 66 violated

---

[1] In this lawsuit, Plaintiff has also named the Phillips 66 Severance Pay Plan (the "Plan") as a defendant. The claim against the Plan is not addressed in this motion and brief. However, Phillips 66 anticipates that the Plan will move for judgment in its favor on the claim for severance pay benefits in its Response Brief to Plaintiff's Opening Brief, filed on September 21, 2017.

the Family and Medical Leave Act ("FMLA") by retaliating against him for taking protected leave or interfering with his right to take FMLA leave. *¶¶ 8.4 – 8.6, the Amended Complaint.* As will be shown, Plaintiff lacks evidence to satisfy the necessary elements of each of his claims and he cannot present evidence of pretext for unlawful discrimination or retaliation.

For these reasons, more fully disclosed below, Phillips 66 is entitled to summary judgment on all of Plaintiff's claims.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      In 1997, Plaintiff was hired by a predecessor company of Phillips 66 as an engineer. *Exhibit "A," pp. 30:16-31:18, 46:14-47:12, Exs. 5 & 13, Pl's dep.*

2.      In 2008, Plaintiff was transferred from New Jersey and began working in the procurement group in Bartlesville, Oklahoma for a Phillips 66 predecessor company. *Ex. A, pp. 47:13-49:8, Pl's dep.*

3.      As part of the procurement group, Plaintiff's job responsibilities included meeting with and assisting various company employees, business units and refineries with negotiating contracts for supplies and services. *Ex. A, pp. 50:2-56:7, 61:19-62:13, Pl's dep.; Exhibit "B," pp. 78:13-80:13, Ex. 9, Ginyovszky dep.*

4.      In 2014, Plaintiff was a "Strategic Sourcing Lead" in the procurement group and became the direct supervisor of Michelle Tarter ("Tarter"), then a Strategic Sourcing Analyst. *Ex. A, pp. 57:3-59:5, 60:20-61:18, Pl's dep.; Exhibit "C," pp. 6:23-7:8, 9:21-10:21, Tarter's dep.*

5.      In September of 2014, Plaintiff was removed from a supervisory role over Tarter, however, throughout the remainder of his employment he continued to work with and office in the same "bullpen type area" as Tarter and another Phillips 66 Bartlesville employee, Mike

Siegfried ('Siegfried").  *Ex. A, pp. 63:12-66:22, Pl's dep.; Exhibit "D," ¶¶, 2 &3, Affidavit of Siegfried; Ex. C, pp. 9:21-10:21, 59:5-21, Tarter's dep.*

6.      In September of 2014, Rebeca Ginyovszky ("Ginyovszky") became Plaintiff's supervisor. *Ex. A, pp. 63:12-64:1, Pl's dep.; Ex. C, pp. 6:23-7:8, Tarter's dep.*

7.      During the period of time Plaintiff reported to Ginyovszky, her job title was Strategic Sourcing Director in procurement and her office was located in Houston, Texas.   *Ex. A, pp. 67:10-68:14, Pl's dep.; Ex. B, pp. 4:16-5:2, Ginyovszky dep.*

8.      As Strategic Sourcing Director, Ginyovszky also supervised Tartar and other employees working in Houston in the procurement group.   *Ex. B, pp.  4:16-7:6, 9:15-17, Ginyovszky dep.*

*The Substance Abuse Policy and Procedures*

9.      During the last year of Plaintiff's employment, Phillips 66's "US Substance Abuse Policy" and "U.S. Substance Abuse Company Non-DOT Procedures" were in place and applicable to Plaintiff.  *Ex. A, pp. 31:23-37:24, 40:16-41:5, Exs. 6 & 9, Pl's dep.; Ex. B, pp. 81:12-82:5, Ex. 10, Ginyovszky's dep.*

10.      The US Substance Abuse Policy provides, in part (except as to possibly prescription drugs), that employees were prohibited from using any substance that "may alter an individual's mood, perception, coordination, response, performance or judgment" while on the job or Company Property. *Ex. A, Ex. 9 (p. 1), Pl's dep.*

11.      The US Substance Abuse Policy and U.S. Substance Abuse Company Non-DOT Procedures provide that employees may be subject to reasonable suspicion/cause drug and alcohol testing in cases where at least two supervisors observe physical signs and symptoms

3

consistent with substance abuse or unsatisfactory work performance.  *Ex. A, Ex. 9 (p. 2), Pl's dep.; Ex. B, Ex. 10 (p. 5, "APPENDIX B"), Ginyovszky's dep.*

*Concerns Regarding Plaintiff's Job Performance*

12.     In 2014 (after she became Plaintiff's supervisor) and 2015 Ginyovszky received several complaints from various Phillips 66 employees regarding Plaintiff.  *Ex B, pp. 42:5-48:12, 66:7-67:14, Exs. 1, 2 & 7, pp. 69:1-71:1, 92:10-19, Ginyovszky dep.*

13.     Several Phillips 66 employees complained to Ginyovszky or other Phillips 66 supervisors that Plaintiff was not spending time in the office, was reporting to work late and was not showing up for work.  *Ex. B, pp. 42:24-43:1, 44:25-45:25, 66:7-67:14, Ginyovszky dep.; Ex. C, pp. 15:10-16:25, 20:12-21:6, 30:1-31:20, 36:19-39:15, Tarter dep.; Ex. D, ¶5, Affidavit of Siegfried.*

14.     Additionally, Ginyovszky received complaints from other Phillips 66 employees that others were having to do Plaintiff's work in order to complete procurement projects.  *Ex. B, pp. 98:17-100:4, Ginyovszky dep.*

15.     As a result of complaints regarding Plaintiff's unsatisfactory attendance, in September of 2014, Ginyovszky had a coaching session with Plaintiff.  *Ex. B, pp. 42:5-43:1, 47:7-11, Ginyovszky dep.*

16.     In November of 2014, Ginyovszky again discussed with Plaintiff concerns regarding reports of his unsatisfactory attendance.  *Ex. B, pp. 47:7-19, 49:23-51:21, Ginyovszky dep.*

17.     In January or February of 2015, Ginyovszky had another coaching session with Plaintiff during which time the attendance issue was again discussed.  *Ex. B, p. 49:8-21, Ginyovszky dep.*

18.     On his "2014 Performance Agreement", which Plaintiff acknowledged receiving by no later than March 3, 2015, Ginyovszky rated Plaintiff's overall job performance for 2014 as "4" or "Below Expectations."   *Ex. A, pp. 76:1-79:16, 82:16-83:1, 87:10-95:23, Ex. 15, Pl's dep.*

19.     In order to address Plaintiff's ongoing problem with attendance, on or about May 21, 2015, Ginyovszky issued a written warning to Plaintiff in which he was directed to report to work by no later than 9:00 a.m. each morning.   *Ex. A, pp. 69:8-70:2, 103:12-105:16, 108:12-12:12, Ex. 20, Pl's dep.*

20.     The May 21, 2015 written warning also specifically provided that additional performance related issues could lead to Plaintiff's dismissal.   *Ex. A, pp. 108:12-12:12, Ex. 20, Pl's dep.; Ex. B, pp. 53:11-20, 58:15-59:19, 64:7-65:3, 96:13-97:17, Ex. 1, Ginyovszky dep.*

21.     Despite the repeated warnings, Ginyovszky continued to receive reports that Plaintiff was not available to work with other Phillips 66 employees and that his lack of availability was having a negative impact on the procurement group and other Phillips 66 departments.   *Ex. B, pp. 61:6-63:15, 97:18-98:16, Ex. 2, Ginyovszky dep.; Ex. D, ¶¶ 2-5, Affidavit of Siegfried.*

22.     Ginyovszky received a report originating from one of Plaintiff's co-workers in Bartlesville that Plaintiff did not report to work at or before 9:00 a.m. on July 14, 2015.   *Ex. B, pp. 55:8-56:7, Ginyovszky dep.*

23.     On July 14, 2015, Plaintiff traveled on a company plane or shuttle from Bartlesville to Houston, Texas.  He traveled to Houston to in order to meet with members of the procurement group, including Ginyovszky, at the company's offices in Houston on July 15, 2015. *Ex. A, pp. 133:12 -34:1, Pl's dep.; Ex. B, pp. 19:19-23:17, 55:8-56:13, Ginyovszky dep.*

24.     Ginyovszky expected Plaintiff to submit to her, prior to July 15, 2015, information in writing necessary for completion of Plaintiff's mid-year review, which was scheduled to occur on July 15.  Plaintiff did not submit the materials before July 15.  *Ex. A, pp. 130:5-134:22, 138:19-139:23, Ex. 23, Pl's dep.; Ex. B, pp. 86:16-88:4, 95:21-96:12, Ginyovszky dep.*

25.     On July 15, 2015, Plaintiff did not report to work by 9:00 a.m. and showed up to the Phillips 66 Houston office at approximately 1:00 p.m., well after he had received an email from Ginyovszky questioning his whereabouts on the morning of July 15.  *Ex. A, pp. 130:8-133:1, Ex. 23, Pl's dep.; Ex. B, pp. 20:6-23:13), Ginyovszky dep.*

*Plaintiff's Drug and Alcohol Test, Meeting with
Dr. William Parsons and Leave of Absence*

26.     When he finally reported to Phillips 66's Houston office on July 15, several Phillips 66 employees noticed that Plaintiff appeared to have slurred speech and was having difficulty standing.  He appeared to them to be impaired at that time.  *Ex. B. pp. 24:19-26:13, Ginyovszky dep.; Exhibit "E," ¶4, Affidavit of Ginyovszky; Exhibit "F," ¶3, Affidavit of Rupert Turner ("Turner"); Exhibit "G," pp. 7:7- 8:23, Linda Miller ("Miller") dep.; Ex. D, ¶6, Affidavit of Siegfried; Exhibit "H," ¶3, Affidavit of Dr. William C. Parsons ("Parsons").*

27.     After he reported to the Houston office on July 15, 2015, based on Ginyovszky's and Turner's observation of Plaintiff, Plaintiff was escorted to the Phillips 66 medical facility located in its Houston office.  *Ex. A, pp. 139:21-146:16, Pl's dep.; Ex. B, pp. 24:19-28:7, Ex. 6, Ginyovszky dep.; Ex. E, ¶3, Affidavit of Ginyovszky; Ex. F, ¶3, Affidavit of Turner; Ex. G, pp. 7:7-13:5, Miller dep.*

28.     While at the medical facility, Plaintiff met with Dr. Parsons, the Chief Medical Officer of Phillips 66.  *Ex. A, pp. 144:10-146:11, 148:3-149:14, 154:5-155:6, Pl's dep.; Ex. H, ¶¶2 & 3, Affidavit of Parsons.*

29.     Dr. Parsons has been practicing medicine for thirty-two (32) years.  His specialty is Family Medicine and Occupational Medicine.  *Ex. H, ¶ 1, Affidavit of Parsons.*

30.     While visiting Plaintiff, it appeared to Dr. Parsons that Plaintiff had slowed affect and slurred speech.  *Ex. H, ¶3, Affidavit of Parsons.*

31.     When questioned by Dr. Parsons about whether he was suffering from an illness or impairment or was taking medication, Plaintiff indicated that he was not ill and did not have an impairment and denied taking any medications.  *Ex. H, ¶3, Affidavit of Parsons.*

32.     On July 15, 2015, based on his observations, Dr. Parsons concluded that Plaintiff was not fit to work and that Plaintiff should be subjected to "reasonable suspicion/cause drug and alcohol testing" in the Philips 66 medical facility. *Ex. H, ¶3, Affidavit of Parsons.*

33.     On July 15, 2015, Plaintiff was tested for drugs and alcohol in the Phillips 66 Houston medical facility.  The tests results were negative.  *Ex. H, ¶4, Affidavit of Parsons.*

34.     Despite the negative tests results, based on Dr. Parson's observation of Plaintiff, Dr. Parsons concluded that Plaintiff might be suffering from a then unknown medical condition or under the influence of a drug that was not part of the panel of drugs that Phillips 66 tested for at that time.  *Ex. H, ¶4, Affidavit of Parsons.*

35.     Certain drugs that may cause impairment or cause someone to be unfit for work, such as synthetic opioids, are not detectable by the drug screen that was conducted by Phillips 66 in July of 2015.   *Ex. H, ¶4, Affidavit of Parsons.*

7

36.     Additionally, some drugs, such as synthetic opioids, are not detectable by drug tests after more than twenty-four hours after ingestion because detectable amounts of the drugs are no longer in the body after that time. *Ex. H, ¶4, Affidavit of Parsons.*

37.     Because Dr. Parsons concluded that he was not fit to work, on July 15, Dr. Parsons determined that Plaintiff should be excused from work and placed on short term disability status ("STD"). *Ex. H, ¶5, Affidavit of Parsons.*

38.     As a result of a STD designation, Phillips 66 may also designate such a leave of absence as FMLA leave until the employee is deemed by his personal physician fit to return to work. *Ex. H, ¶5, Affidavit of Parsons.*

39.     Despite the fact that Plaintiff claims that he was never impaired, disabled or suffering from a serious health condition in 2015 and never needed or requested FMLA leave in 2015, as a result of Dr. Parson's conclusion that Plaintiff was not fit to work on July 15, 2015, Phillips 66 characterized Plaintiff's leave of absence from work as FMLA leave. *Ex. A, pp. 16:4-17:22, 19:13-21:11, 145:24-146:11, 154:24-159:2, Exs. 27, 28 & 29, Pl's dep.*

40.     On July 16, 2015, after Plaintiff was placed on a leave of absence, Dr. Parsons spoke with Plaintiff's personal healthcare provider by telephone and explained to her what Dr. Parsons had observed on July 15.  The two doctors discussed the possible medical causes of Plaintiff's July 15 behavior and what test Plaintiff's personal physician might use to evaluate him.  Additionally, Plaintiff's personal physician indicated that she would conduct a 10 panel blood toxicology (drug) screen and other lab tests when she visited with him on July 17, 2015. *Ex. H, ¶6, Affidavit of Parsons.*

41.     On or about July 23, 2015, Dr. Parsons again spoke to Plaintiff's personal physician.  During that conversation, she indicated that all lab tests that she had conducted were

normal and that Plaintiff was completely "normal" mentally when she evaluated him.  She also indicated that she had released him to return to work on July 27, 2015 without any restrictions. *Ex. H, ¶6, Affidavit of Parsons.*

42.     On July 27, 2015, Plaintiff returned to work from his leave of absence.  Ex. A, p. *159:16-25, Pl's dep.*

43.     Plaintiff was compensated for the period of time he was on the leave of absence. Ex. A, p. *165:14-17, Pl's dep.*

*Plaintiff's Interview with Tom Schroeder*

44.     When Plaintiff returned to work, he was interviewed by a Phillips 66 Human Resources representative, Tom Schroeder ("Schroeder"), regarding Plaintiff's conduct on July 15 and was questioned as to whether he stayed at a hotel in Houston on July 14, 2015.  *Ex. A, pp. 159:16-165:7, 166:16-176:20, Exs. 31, 33 & 34, Pl's dep.; Ex. F, ¶5, Affidavit of Turner.*

45.     During his meeting with Schroeder, Plaintiff explained that the hotel had erroneously noted that he had not stayed at the hotel on the night of July 14, 2015; confirmed that he did not report to the Phillips 66 Houston office until after noon on July 15, 2015; and told Schroeder that he was "clean" and did not need any help from the Phillips 66 Employee Assistance Program ("EAP").  *Ex. A, pp. 169:14-176:20, Ex. 34. Plf's dep.*

*Plaintiff's Dismissal*

46.     After Plaintiff's interview with Schroeder, Ginyovszky consulted with her direct supervisor, Turner, regarding Plaintiff's employment.  *Ex. F, ¶6, Affidavit of Turner; Ex. E, ¶6, Affidavit of Ginyovszky.*

47.     As a result of unsatisfactory job performance, including Plaintiff's failure to timely provide information to Ginyovszky for Plaintiff's mid-year review and to report to the

9

Houston office during the morning of July 15, 2015, Plaintiff was discharged from employment with Phillips 66 on August 6, 2015. *Ex. A, pp. 179:25-183:6, Ex.36, Pl's dep.; Ex. E, ¶6, Affidavit of Ginyovszky; Ex. B, pp. 19:16-23:17, 33:18-34:4, 55:8-56:17, 74:11-15, 77:8-21, 95:21-100:16, Exs. 1 & 2, Ginyovszky's dep.*

48.     Plaintiff was not discharged because anyone believed that he had a physical or mental impairment. *Ex. E, ¶7, Affidavit of Ginyovszky; Ex. F, ¶7, Affidavit of Turner.*

49.     The decision to discharge Plaintiff had nothing to do with the fact that he was placed on a leave of absence or because he may have taken leave under the FMLA. *Id.*

50.     Plaintiff was not discharged due to a positive drug or alcohol test result. *Id*

51.     The decision to terminate Plaintiff's employment had nothing to do with Plaintiff's association with his son or anyone else who was alleged to be disabled. *Id.*

## ARGUMENT AND AUTHORITY

### I.     Standard Governing Summary Judgment in Federal Court

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   A dispute is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*   The moving party may establish the absence of a genuine dispute of fact by "citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), or "showing that the materials cited do not establish the…presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact," Fed. R. Civ. P. 56(c)(1)(B).

When addressing a motion for summary judgment, a court must examine the factual record and draw inferences "in the light most favorable to the nonmoving party." *Simms v.*

*Oklahoma*, 165 F.3d 1321, 1326 (10th Cir. 1999).  Nevertheless, where, as here, the nonmovant bears the ultimate burden of proof, the movant "need not affirmatively negate the nonmovant's claim in order to obtain summary judgment." *Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997).  Instead, the movant need only demonstrate "an absence of evidence to support the nonmoving party's case." *Bacchus Industr., Inc. v. Arvin Industr., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Thereafter, "the burden shifts to the [nonmovant] party to show that there is a genuine issue of material fact." *Id*. at 891.  To satisfy this burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256 (emphasis added); *see* Fed. R. Civ. P. 56(c)(1)(A).  As a result, to avoid summary judgment, the nonmovant bears "the burden of raising a genuine issue of material fact on each element of [her] prima facie case." *Doyal v. Oklahoma Heart, Inc.*, 213 F.3d 492, 495 (10th Cir. 2000).

## II.   Phillips 66 Is Entitled To Judgment On Plaintiff's ADA Discrimination Claims

   **1.**      Phillips 66 is Entitled To Summary Judgment on Plaintiff's "Regard As" And "Record Of" ADA Claims Because He Cannot Make A Prima Facie Case of Discrimination In Support of Those Claims.

Although Plaintiff admits that he never had a disability or impairment in 2014 or 2015, he claims that Phillips 66 violated the ADA because various Phillips 66 employees considered him to be impaired due to drugs, alcohol or an unspecified mental condition on July 15, 2015 and, as a result, he was discharged from employment. *Ex. A, pp 14:24-17:22, Pl's dep.*  According to Plaintiff, Phillips 66's alleged conduct is prohibited by the ADA because it constituted

11

discrimination based on a record of an impairment or because Phillips 66 regarded him to be impaired. *Id.* Based on the Undisputed Material Facts ("UMFs") and applicable law, Phillips 66 is entitled to judgment on these ADA claims because he cannot point to any admissible evidence sufficient to support a prima facie case of disability discrimination.

To establish a prima facie case of discrimination under the ADA, Plaintiff must show, by a preponderance of the evidence: (1) he is a "disabled" person under the ADA; (2) he is qualified to perform the essential functions of the job; and (3) he was discriminated against because of his disability. *Carter v. Pathfinder Energy Svcs., Inc.,* 662 F.3d 1134, 1142 (10th Cir. 2011). Under the ADA, a person is considered "disabled" if he has a record of an impairment that substantially limits one or more major life activities or "the individual establishes that he or she has been subjected to an action . . . because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. §§12102(1), 12102(3)(A).

"To have a record of . . . an impairment, a plaintiff must have a history of, or been misclassified as having, an impairment that substantially limited a major life activity." *Sorensen v. Univ. of Utah Hosp.,* 194 F. 3d 1084, 1087 (10th Cir. 1999). "[T]he record-of-impairment is satisfied only if [he] actually suffered [an impairment] that substantially limited one or more of [his] major life activities." *Id.* (quoting *Hilburn v. Murata Elec. N. Am., Inc.,* 181 F. 3d 1220, 1229 (11th Cir. 1990); *see also Doebele v. Sprint/United Management Company,* 342 F.3d 1117, 1132 (10th Cir. 2003).

Unlike an "impairment" as defined in § 12102(1)(A) and (B), an "impairment" under § 12102(1)(C) need not actually limit or be perceived by the employer to limit a major life activity. *Wolfe v. Postmaster Gen.*, 488 F. App'x 465, 468 (11th Cir. 2012) ("a plaintiff need demonstrate

only that the employer believed the impairment prevented the plaintiff from performing a major life activity.") The only remaining qualification on the term "impairment." for purposes of § 12102(1)(C), is that a condition may not be deemed an impairment if it is "transitory and minor." 42 U.S.C. § 12102(3)(B).  A transitory impairment is one "with an actual or expected duration of [six] months or less." *Id.*

Because he was not "disabled", as defined by the ADA, Plaintiff cannot establish a prima facie case of disability discrimination based on a so called record of an impairment that substantially limited a major life activity or because he was regarded as having an impairment. As noted in the UMFs, there is absolutely no record of any impairments that substantially limited any of Plaintiff's major life activities during his employment with Phillips 66.   *UMFs 31, 39, 41, 45.*  In fact, in his deposition, Plaintiff made it very clear that he did not have any impairments during at least the last two years of his employment with Phillips 66.  *Ex. A, pp 14:24-17:22, Pl's dep.*  Additionally, as to his "regarded as" claim, the alleged "impairment", if any, was limited to one afternoon on July 15, 2015.   *UMFs 32, 37, 41.* According to Plaintiff, Phillips 66 erroneously believed that he could not work on that afternoon due to possible then current drug use or a mental health issue.  *Ex. A, pp. 14:24-17:32, Pl's dep.*  Significantly, he returned to work less than two weeks after the afternoon of July 15, 2015 and after he visited with his doctor, who reported to Phillips 66 that Plaintiff could return to work with no restrictions and had no impairments.  *UMFs 41, 42.*  Based on the UMFs and applicable law, if Plaintiff did have an impairment on July 15, it was transitory and minor and, as a result, cannot form the basis of a "regarded as" disability claim.  For these reasons, Phillips 66 is entitled to summary judgment on Plaintiff's ADA "record of an impairment" and "regarded as" claims.

Phillips 66 is also entitled to summary judgment on these ADA claims because he cannot

point to evidence sufficient to support the third element of a prima facie case of disability discrimination.  As noted in the UMF's, long before the afternoon of July 15, 2015 and on several occasions, Phillips 66 addressed its concerns with Plaintiff regarding his performance issues that persisted through 2014 and up to July 15, 2015.  *UMFs 12-25*.  For example, long before July, 2015, he had been advised to report to work at Phillips 66 offices by no later than 9:00 a.m. each work day. *UMF 20*.  Inexplicably, he failed to do so on July 14 and 15, 2015. *UMFs 23, 25*.  He also failed to provide important information necessary for his mid-year review prior to July 15. *UMF 24*.  Based on these UMF's, Plaintiff cannot point to any admissible evidence sufficient to create a reasonable inference that he was discharged because he was disabled.  For this additional reason, Phillips 66 is entitled to summary judgment on Plaintiff's ADA "record of an impairment" and "regarded as" claims.

2.      **Phillips 66 Is Entitled To Summary Judgment On Plaintiff's ADA Association Claim Because Plaintiff Cannot Make A Prima Facie Case in Support of Such A Claim**

Plaintiff has also alleged that Phillips 66 dismissed him from employment because his son, Mason, has a disability.  *Ex. A, pp. 18:5-19:12, 203:13-206:14.*  Plaintiff's discrimination claim is based on nothing more than speculation:   he suspects Phillips 66 decided to discharge him from employment because he expressed a preference to continue to work in Oklahoma (because his son does not like change)[2]; he sometimes took vacation to attend Special Olympics events and Ginyovszky did not ask him about those events[3]; and he may have taken off on occasions to attend doctor's appointments for Mason.[4]  None of this speculation rises to the level of evidence sufficient to support a prima facie case of disability discrimination.

In order to establish a *prima facie* case of "association discrimination" under ADA,

---

[2] Ex. A, pp. 203:13-204:15, Pl's dep.
[3] Ex. A, pp. 204:16-205:17, Pl's dep.
[4] Ex. A, pp. 205:18-206:14, Pl's dep.

Plaintiff must demonstrate, by a preponderance of the evidence, the following:

> (1)   he was "qualified" for the job at the time of the adverse employment action;
> (2)   he was subjected to adverse employment action;
> (3)   he was known by his employer at the time to have a relative or associate with a disability;
> (4)   the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.

*Den Hartog v. Wasatch Academy,* 129 F.3d 1076, 1085 (10th Cir. 1997).

In this case, there is absolutely no evidence that Plaintiff's relationship with his son was a determining factor in the decision to end Plaintiff's employment. As discussed above, Plaintiff's son or his alleged disability were never considered during the period of time that Phillips 66 made the decision to discharge Plaintiff from employment. *UMFs 47, 51.* There is simply no evidence giving rise to a reasonable inference that Plaintiff's relationship with his son was a factor let alone a determining factor in the decision to end his employment. For this reason, Plaintiff cannot make a prima facie case of association discrimination and Phillips 66 should be granted judgment on that claim.

### III.   **Plaintiff Cannot Establish Pretext For Disability Discrimination**

      **1.**    Plaintiff Cannot Show that Phillips 66's Proffered Reasons for Its Actions Were a Pretext for Discrimination

The burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973), applies to Plaintiff's ADA (and FMLA retaliation) claims. *Den Hartog,* 129 F.3d at 1085; *Brown v. ScriptPro, LLC,* 700 F.3d 1222, 1229 (10th Cir. 2012). Under the *McDonnell Douglas* framework, the plaintiff must establish a prima facie case of discrimination by a preponderance of the evidence. *Smothers v. Solvay Chems., Inc.,* 740 F.3d 530, 539-40 (10th Cir. 2014). If the plaintiff establishes a prima facie case a rebuttable presumption arises that the defendant unlawfully discriminated against the plaintiff. *St. Mary's*

*Honor Ctr. V. Hicks,* 509 U.S. 502, 506-07 (1993).   The burden then shifts to the employer to proffer a legitimate, nondiscriminatory reason for the adverse employment action.   *Dewitt v. Sw. Bell Tel. Co.,* 845 F.3d 1299, 1307 (10th Cir. 2017).   Finally, the burden shifts back to the employee to show the proffered reason is pretextual.   *Id.*

Even if Plaintiff could establish a prima facie case of disability discrimination, Phillips 66 had legitimate, non-discriminatory reason for taking the alleged adverse action against Plaintiff: unsatisfactory job performance. *UMF 47.*   Because Phillips 66 has met its burden by articulating non-discriminatory reasons for its challenged conduct any presumption of discrimination established by the prima facie showing "simply drops out of the picture," and the burden shifts back to the Plaintiff.   *Jones v. Unisys Corp.,* 54 F.3d 624, 630 (10th Cir. 1995).   Plaintiff bears the ultimate burden of demonstrating that Phillips 66's proffered reasons are "pretextual." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006)(citations omitted).   In order to defeat a motion for summary judgment, a plaintiff must show that "there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual-i.e., unworthy of belief.'   *Randle v. City of Aurora*, 69 F. 3d 441, 451 (10th Cir. 1995).

"To support an inference of pretext. . . . a plaintiff . . . . must come forward with evidence that the employer didn't really believe its proffered reasons for action and thus may have been pursuing a hidden discriminatory agenda." *Johnson v. Weld City*, 594 F.3d 1202, 1211 (10th Cir. 2010).   When reviewing a plaintiff's "contention of pretext, [courts] examine the facts 'as they appear to the person making the decision to terminate [the] plaintiff.'"   *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001) (alteration in original) (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000)).   "[Courts] may not second

guess the business judgment of the employer." *Id.*  Courts should not rely on the benefit of hindsight to second-guess a defendant's employment decision if it appears that the defendant acted on an honestly held business judgment. *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006).  Thus, it is not the Court's province to decide whether Phillips 66's reasons for its business decision were "wise, fair, or even correct," so long as these were the true reasons for the decisions. *Hardy v. S.F. Phosphates Ltd. Co*., 185 F.3d 1076, 1083 (10th Cir. 1999).

As discussed above, Phillips 66 had legitimate business reasons for taking the actions at issue in this case.  Obviously, Plaintiff believes Phillips 66's should have acted differently but he cannot point to any inconsistency or contradiction in the above facts to support an argument of pretext.  Therefore, Plaintiff cannot establish his burden of production and summary judgment should be granted to Phillips 66 on his ADA discrimination claims.

### IV.   Phillips 66 Is Entitled To Summary Judgment On Plaintiff's Oklahoma Testing Act Claim Because Plaintiff Has Failed To Identify A Cause of Action Against Phillips 66 Under the Act

In Count III of the Amended Complaint, Plaintiff asserts a claim purportedly arising under the Oklahoma Testing Act.  Specifically, Plaintiff alleges that (1) "[Phillips 66] was an 'employer' under…the [Oklahoma Testing Act]," (2) "Plaintiff [wa]s an 'employee' under…the [Oklahoma Testing Act]," and (3) "[Phillips 66's] termination of [P]laintiff's employment after two successive negative drug and alcohol tests for suspicion of drug/alcohol use violates the [Oklahoma Testing Act]."  *See* Amended Complaint ¶¶ 7.3-7.5, ECF No. 33.  During his deposition, Plaintiff has only identified one factual basis for his claim under the Oklahoma Testing Act:  he was dismissed from employment following negative drug and alcohol test results. *Ex. A, pp. 207:20-208:19, Pl's dep.*  Phillips 66 does not dispute that Plaintiff was an employee and Phillips 66 was an employer within the meaning of the Oklahoma Testing Act and

that Plaintiff's drug and alcohol tests were negative.   Nevertheless, Plaintiff has failed to articulate a recognizable claim under the Oklahoma Testing Act.

"Any person aggrieved by a willful violation of the [Oklahoma Testing Act] may institute a civil action in a court of competent jurisdiction within one (1) year of the alleged willful violation." 40 O.S. § 563(A).  "A willful violation of the [Oklahoma Testing Act] requires proof by the preponderance of the evidence that the employer had a specific intent to violate the [Oklahoma Testing Act]." *Id*.  Thus, to prevail on Count III of the Amended Complaint, Plaintiff must show that Phillips 66 had the specific intent to violate some provision of the Oklahoma Testing Act.

As an initial matter, Plaintiff has cited no admissible evidence in the record supporting his allegation that Phillips 66 terminated his employment "for suspicion of drug/alcohol use." *See* Amended Complaint ¶ 7.5, ECF No. 33.   Instead, the uncontroverted testimony and documentary evidence offered by Phillips 66 shows that it terminated Plaintiff's employment for job performance issues—not because it suspected drug use.

More important, even if Plaintiff had admissible evidence, as opposed to mere speculation, that Phillips 66 terminated his employment because it suspected that he was using drugs or alcohol, and even if Phillips 66 terminated Plaintiff's employment based on such suspicions "after two successive negative drug and alcohol tests," *see* Amended Complaint ¶ 7.5, ECF No. 33, Plaintiff's claim would fail because ***nothing in the Oklahoma Testing Act precludes an employer from terminating the employment of someone it suspects of using drugs or alcohol, regardless of whether that person has been tested and regardless of whether the test is negative***.  Indeed, it is telling that despite identifying the specific statutory provisions of the Oklahoma Testing Act defining "employer" and "employee," Plaintiff cites no provision

18

imposing any such limitation on Phillips 66.

The Act does not contain a prohibition against discharging an employee who has tested negative pursuant to a drug or alcohol test.   Under Oklahoma law, unless doing so would contravene a constitutional, statutory, common law, "an employer may discharge an employee for good cause, for no cause or even for cause morally wrong, without being thereby guilty of legal wrong." *Burk v. K-Mart Corp.*, 1989 OK 22, ¶ 5, 770 P.2d 24, 26.[5]   In other words, it does not matter if Phillips 66's termination of Plaintiff's employment was expressly authorized or protected by the Oklahoma Testing Act; unless the termination of Plaintiff's employment was expressly prohibited by the Oklahoma Testing Act, Phillips 66 was free to discharge Plaintiff for any reason or no reason at all.

In sum, not only has Plaintiff failed to offer admissible evidence that Phillips 66 discharged him based on suspicions that he was using drugs or alcohol, despite two negative tests, he has also failed to cite any authority for the proposition that such a discharge would constitute a violation of the Oklahoma Testing Act even if he had offered such evidence. Accordingly, Count III of Plaintiff's First Amended Complaint should be dismissed.

## V.       Phillips 66 is Entitled to Judgment On Plaintiff's FMLA Claims

Plaintiff's FMLA claims center around the leave of absence that began on July 15, 2015 after his visit with Dr. Parsons. *Ex. A, pp. 19:13-21:11, 156:22-158:9, 206:15-207:19. Pl's dep.* Plaintiff denies that he was suffering from any impairment or illness at any time during the leave of absence and states that he did not request nor need FMLA leave at that time. *Ex. A, pp. 19:13-*

---

[5] Although *Burk* recognized a narrow exception to the doctrine of employment at will that permits a party to maintain a cause of action for wrongful discharge for violation of Oklahoma public policy, Plaintiff has neither asserted such a claim in his Amended Complaint nor sought leave to do so.  In any event, because no public policy contained in the Oklahoma Testing Act or elsewhere in Oklahoma constitutional, statutory, or common law would be implicated even under Plaintiff's unsupported allegations, such a claim would likewise fail as a matter of law.

*21:11, Pl's dep.*  In other words, Plaintiff admits that he was not suffering from a "serious health condition," as defined by the FMLA, during the leave of absence that began on July 15, 2015 and ended upon his return to work on July 27, 2015.  *UMFs 37-42.*  Because he was not entitled to FMLA leave during the leave of absence, Phillips 66 did not interfere with his leave of absence and he suffered no adverse action as a result of the leave of absence Phillips 66 is entitled to summary judgment on Plaintiff's FMLA claims.

> 1.  Phillips 66 is Entitled to Summary Judgment on Plaintiff's FMLA Interference Claim Because Plaintiff Cannot Establish a Case of Interference.

The FMLA "provides that eligible employees of certain employers have the right to take unpaid medical leave for a period of up to twelve work weeks in any twelve month period for a serious health condition as defined by the Act."  *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 959 (10th Cir. 2002).  The FMLA makes it unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise these rights.  29 U.S.C. § 2615(a)(1).

To establish an FMLA interference claim, Plaintiff must show:  (1) he was entitled to FMLA leave; (2) an adverse action by Phillips 66 interfered with his right to take FMLA leave; and (3) Phillip 66's adverse action was related to the exercise or attempted exercise of his FMLA rights.  *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007).  "For purposes of FMLA, *serious health condition* entitling an employee to FMLA leave means an illness, injury, impairment or physical or mental condition that involves inpatient care . . . or continuing treatment by a health care provider."  29 CFR 825.113(a).

"Even if [the employee] shows these elements, the [employer] will still prevail if it shows that [the employee] would have been dismissed regardless of his request or taking of, FMLA leave." *Sabourin v. Univ. of Utah,* 676 F.3d 950, 958 (10th Cir. 2012)(internal quotation marks omitted).    For example, the Tenth Circuit has affirmed judgments in interference cases in favor

20

of employers where unsatisfactory job performance was discovered before and during FMLA leave. *See, e.g., Renaud v. Wyo. Dep't of Family Servs.,* 203 F.3d 723, 732 (10th Cir. 2000)(employee was fired during his FMLA leave because he had gone to work drunk before taking leave); *Sabourin,* 676 F.3d at 961 (employee was fired "for his disloyal and obstructive conduct while on FMLA leave").

In this case, Plaintiff cannot present evidence to support any of the elements of a case of FMLA interference.  By testifying that he was not ill or impaired at the time of the leave of absence he has admitted that he was not eligible for FMLA leave during 2015. *Ex. A, pp 19:13-21:11, Pl's depo.*  Additionally, assuming he had a right to take FMLA, starting July 15, 2015, it is illogical to assume that Phillips 66 interfered with such a right because Phillips 66, without any request or demand from Plaintiff, placed him on a leave of absence and did not discourage Plaintiff from taking the time off or pressure him to return to work until he was cleared to work by his doctor.   *UMFs 39-42*. Furthermore, Plaintiff was compensated by Phillips 66 for the period of time that he was off work. *UMF 43*.

Finally, of whether he can produce evidence sufficient to support any elements of the claim, as discussed above, Plaintiff would have been terminated due to unsatisfactory job performance.   For this additional reason, Phillips 66 is entitled to summary judgment on Plaintiff's FMLA interference claim.

### 2.     Phillips 66 is Entitled to Judgment On Plaintiff's FMLA Retaliation Claim Because Plaintiff Cannot Make A Prima Facie Case of Retaliation Or Demonstrate Pretext for Retaliation

The FMLA prohibits an employer from retaliating against an employee for opposing a practice made unlawful by the FMLA.  29 U.S.C. § 2615(a)(2).  FMLA retaliation claims are subject to the burden-shifting framework of *McDonnell-Douglas Corp.  Campbell*, 478 F.3d at 1287.  To make out a prima facie FMLA retaliation claim, Plaintiff mush show that (1) he

engaged in protected FMLA activity; (2) Phillips 66 took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action. *Metzler,* 464 F.3d at 1171.  The third element of a prima facie case for FMLA retaliation requires a showing of "bad intent" or "retaliatory motive" by the employer. *Campbell*, 478 F.3d at 1287.  If shown, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action. *Id*. at 1172.  To establish a genuine dispute of material fact as to pretext, a plaintiff cannot rely solely on temporal proximity of her FMLA leave and the adverse employment action but instead must offer some other evidence of retaliatory motive. *Id.*

Plaintiff cannot satisfy the first and third elements of the prima facie case for FMLA retaliation. As discussed above, because he did not have an impairment or illness in July of 2015, he was not eligible for FMLA leave and, therefore, he was not engaged in protected activity under the FMLA during the July, 2105 leave of absence.  Additionally, assuming the leave was FMLA protected, there is no evidence of a causal connection.  It is unreasonable to assume that Phillips 66 retaliated against Plaintiff as a result of the **company's unsolicited decision** to place him on a leave of absence.   For these reasons, Phillips 66 is entitled to summary judgment on Plaintiff's FMLA retaliation claim.

Finally, Plaintiff cannot demonstrate that his dismissal was pretext for FMLA retaliation. As discussed above, Phillips 66 had legitimate business reasons for taking the actions at issue in this case and Plaintiff cannot point to any inconsistency or contradiction in the above facts to support an argument of pretext.  Therefore, Plaintiff cannot establish his burden of production and summary judgment should be granted to Phillips 66 on his FMLA retaliation claim.

## CONCLUSION

For the reasons set forth above, Phillips 66 respectfully requests that the Court enter summary judgment in favor of Phillips 66 as to each of the claims set forth in Manna's Amended Complaint and award Phillips 66 any further relief that the Court deems just and appropriate.

Respectfully submitted,

s/Steven A. Broussard

Steven A. Broussard, OBA #12582
**HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.**
320 South Boston Avenue, Suite 200
Tulsa, OK  74103-3706
Telephone (918) 594-0442
Facsimile (918) 594-0505

**ATTORNEYS FOR DEFENDANT
PHILLIPS 66 COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of October, 2017, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the Following ECF registrants:

Jeff A. Taylor
Chadwick & Taylor
5613 N. Classen Blvd.
Oklahoma City, Oklahoma 73118

s/Steven A. Broussard

23

Dated:        October _____, 2017              Respectfully submitted,


                                                 **HALL, ESTILL, HARDWICK, GABLE,**
                                                 **GOLDEN & NELSON, P.C.**


                                        By:      *s/Steven A. Broussard*
                                                 Steven A. Broussard, OBA #12582
                                                 320 South Boston Avenue, Suite 200
                                                 Tulsa, OK  74103-3706
                                                 Telephone:  (918) 594-0400
                                                 Facsimile:  (918) 594-0505
                                                 Email:  sbroussard@hallestill.com

                                                 **ATTORNEYS FOR DEFENDANT**
                                                 **PHILLIPS 66 COMPANY**


3141553.1:711551:01887