**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **WILLIAM MANNA, an individual,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 16-CV-500-TCK-FHM** |
| **PHILLIPS 66 COMPANY, a foreign company, and PHILLIPS 66 SEVERANCE PAY PLAN,** | |
| **Defendant.** | |

**DEFENDANT PHILLIPS 66 SEVERANCE PAY PLAN RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT OR MOTION TO RE-OPEN CAUSE FOR ENTRY OF JUDGMENT AWARDING BENEFITS**

Defendant Phillips 66 Severance Pay Plan ("the Plan") hereby submits its response in opposition to the Motion for Judgment or Motion to Re-Open Cause for Entry of Judgment Awarding Benefits by Plaintiff William Manna ("Plaintiff"). Because Plaintiff cites no authority justifying the automatic entry of judgment in his favor following an adverse decision by the Plan on remand from the Court, Plaintiff's motion should be denied.

**BACKGROUND**

1.    The Plan is a welfare plan pursuant to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* Admin Record, 000002.

2.    Under the express terms of the Plan, "a Participant is eligible to receive benefits under this Plan *if he has all Qualifying Circumstances and does not have a Disqualifying Circumstance*." Admin Record, 000008-000009 (emphasis added).

3.    Under the express terms of the Plan, "[a] Participant has all Qualifying

1

Circumstances if...[h]e has a Layoff on or after May 1, 2012." *See* Admin Record, 000009.

4.      Under the express terms of the Plan, "the term 'Layoff' or 'Laid Off' applies *if...*[*Phillips 66 Company ("Phillips 66")*] *gives the Participant Notice of Layoff*." *See* Admin Record, 000004 (emphasis added).

5.      Under the express terms of the Plan, "the term 'Notice of Layoff' means *a written notice provided by* [*Phillips 66*] *to the Participant* in a form acceptable to the Plan Administrator stating the Date of Layoff." *See* Admin Record, 000006 (emphasis added).

6.      Under the express terms of the Plan, "such notice is a Notice of Layoff *only if approved by...* [*t*]*he applicable business line's Human Resources General Manager or the highest level Human Resources manager with responsibility for staffing the applicable business line* in the case of an Employee who is not a Tier 1 Executive Employee or a Tier 2 Executive Employee." *See* Admin Record, 000006 (emphasis added).

7.      Under the express terms of the Plan, "[a] Participant has a Disqualifying Circumstance, even if he has been given a Notice of Layoff, if...he is terminated for cause *as* indicated by the fact that his termination is recorded in [Phillips 66's] personnel system as a 'discharge' or similar classification." See Admin Record, 000009 (emphasis added).

8.      Thus, under the express terms of the Plan, a Participant is not eligible for benefits if (1) he has not received a written Notice of Layoff from Phillips 66 approved by the highest level Human Resources manager with responsibility for staffing his job or (2) Phillips 66's personnel system indicates that he has been discharged for cause.  See Admin Record, 000004, 000006, 000008-000009.

9.      The Plan specifically provides that the Plan Administrator is authorized "to interpret and administer the Plan, including the resolution of ambiguities, inconsistencies and

2

omissions" and "to determine benefit eligibility…and to make the initial findings of fact and resolution of disputes or claims."  *See* Admin Record, 000014.

10.     The Plan also provides that the Benefits Committee has similar authority, as well as the power to review and resolve disputes or claims which may arise under the Plan following review and initial resolution by the Plan Administrator.  *See* Admin Record, 000013.

11.     In 1997, Plaintiff was hired by a predecessor of Phillips 66.  *See* Admin Record, 000150, 000289.

12.     On August 6, 2015, Phillips 66 terminated Plaintiff's employment.  *See* Admin Record, 000289, 000297.

13.     At no time before or after the termination of Plaintiff's employment did Phillips 66 provide Plaintiff with a written Notice of Layoff.  *See* Admin Record, 000284-000285.

14.     Phillips 66 recorded in its personnel system that Plaintiff had been discharged for cause.  *See* Admin Record, 000284-000285.

15.     In January 2017, Plaintiff submitted a claim for severance benefits under the Plan to the Plan Administrator, alleging that because he had not been dismissed for cause but due to a reduction in force or job elimination, he was entitled to severance benefits.  *See* Admin Record, 000151-000152.

16.     On January 30, 2017, the Plan Administrator notified Plaintiff that his request for severance benefits under the Plan had been denied because Phillips 66 had discharged Plaintiff for cause.  *See* Admin Record, 000166-000167.

17.     On or about March 27, 2017, Plaintiff submitted a written appeal of the Plan Administrator's determination to the Benefits Committee.  *See* Admin Record, 000193-000283.

18.     On May 12, 2017, the Benefits Committee issued its denial of Plaintiff's appeal,

concluding that Phillips 66 had discharged Plaintiff for cause and that Phillips 66 had not provided a written Notice of Layoff to Plaintiff.  *See* Admin Record, 000284-000285.

19.     On July 25, 2017, Plaintiff filed his First Amended Complaint and Demand for Jury trial.  *See* First Amended Complaint, ECF No. 33.

20.     In Count V of his First Amended Complaint, Plaintiff asserted a single claim against the Plan for payment of severance benefits pursuant to Section 502(a)(1)(B) of the Employment Retirement Income Security Act ("ERISA"), 28 U.S.C. § 1132(a)(1)(B).  Id. ¶¶ 9.1-9.5.

21.     After the completion of the administrative record, on September 21, 2017, Plaintiff filed his Opening Brief in support of his claim against the Plan for severance benefits under ERISA.   See Opening Brief, ECF No. 48.

22.     In his Opening Brief, Plaintiff requested that "[b]enefits…be awarded, or alternatively, the claim…be remanded back to the Plan to require a full and fair review which includes elimination of his position."  Id. at 23.

23.     On January 17, 2018, the Court entered its Opinion and Order on Plaintiff's claim for benefits against the Plan under ERISA.  See Opinion and Order 1, ECF No. 68.

24.     In its Opinion and Order, the Court acknowledged that "ERISA claims…must be resolved by reference to the administrative record or remanded to the plan administrator for further proceedings."  Id. at 16 n.11.

25.     The Court also made various factual findings, including that (a) "[t]he Plan Administrator is authorized…to determine benefit eligibility…and to make the initial findings of fact and resolution of disputed claims," (b) "the Benefits Committee (the "Committee") has similar authority and…power to review and resolve disputes or claims which may arise under the

Plan, following review and initial resolution by the Plan Administrator," (c) "Plaintiff submitted a request for severance pay benefits under the Plan," (d) "the Plan Administrator denied the claim," (e) "Plaintiff appealed the denial," and (f) "the Committee denied the appeal."  Id. at 18-19 (quotations omitted).

26.     Ultimately, the Court found that "the Plan's decision to deny Plaintiff's claim for severance pay was arbitrary and capricious."  Id. at 22.

27.     The Court therefore reversed the decision of the Plan Administrator and ordered that "Plaintiff's claim for benefits [be] remanded to the Plan for further findings and explanation."  Id.

28.     On February 2, 2018, the Court entered its Amended Judgment, providing that the decision of the Plan to deny Plaintiff's claim for severance pay benefits was "reversed and remanded to the Plan for further proceedings, including consideration of whether [P]laintiff is entitled to severance pay benefits, consistent with the Court's Opinion and Order of January 17, 2018."  See Amended Judgment dated February 2, 2018, ECF No. 71.

29.     In accordance with the Court's Opinion and Order of January 17, 2018, and the Court's Amended Judgment, the Benefits Committee conducted a second review to determine whether Plaintiff was entitled to severance benefits under the terms of the Plan.  See Letter dated March 2, 2018, ECF No. 77-1.

30.     On March 2, 2018, the Benefits Committee issued its decision on remand, denying Plaintiff's claim for severance benefits.  Id.

31.     As the Benefits Committee explained, "neither the Plan Administrator nor the Benefits Committee ha[s] the power or authority to reevaluate Company decisions regarding layoffs," and "neither the Plan Administrator nor the Benefits Committee ha[s] the power or

authority to issue a notice of layoff." Id. at 1 (emphasis added). Instead, under the express terms of the Plan, "the Plan Administrator and Committee, respectively, must determine whether the Company issued a written notice of layoff to the claimant because the terms of the Plan provide that a participant is not eligible for benefits unless he has been given a written notice of layoff." Id. at 1-2 (emphasis added). "If the Plan Administrator or Committee determines that a written notice of layoff was issued to a participant and also determines that there were no disqualifying circumstances, they will determine that the individual is eligible for benefits under the Plan." Id. at 2. "If they determine that [Phillips 66] did not issue a notice of layoff to the individual, the inquiry ends there," id. (emphasis added), and "[t]he individual is not eligible for benefits under the express terms of the Plan, and the claim or appeal must be denied," id. Because "a written notice of layoff was not issued [to Plaintiff]…[he is] ineligible for benefits under the express terms of the Plan." Id. (emphasis added).

32.     Moreover, as the Benefits Committee explained, "a participant has a 'Disqualifying Circumstance,' which makes him ineligible for benefits under the Plan, if 'he is terminated for cause as indicated by the fact that his termination is recorded in [Phillips 66's] personnel system as a "discharge" or similar classification.'" Id. (emphasis added). However, "neither the Plan Administrator nor the Committee have the power or authority to make decisions regarding an employee's termination or to reassess the basis for an employee's termination." Id. (emphasis added). Instead, "[t]he Plan Administrator and Committee have authority only to determine whether a participant is eligible for benefits under the terms of the Plan," id. (emphasis added), and because Plaintiff's "termination was recorded in [Phillips 66's] personnel system as a termination for cause [Plaintiff is] ineligible for benefits under the express terms of the Plan," id. (emphasis added).

33.    On March 12, 2018, Plaintiff filed a Motion to Supplement or Add to Administrative Record, seeking to add the Benefits Committee's letter of March 2, 2018, to the administrative record before the Court.

## ARGUMENT AND AUTHORITY

Where a "benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan…the court reviews the administrator's denial according to an 'arbitrary and capricious' standard." Gilbertson v. Allied Signal, Inc., 328 F.3d 625, 630 (10th Cir. 2003); Holcomb v. Unum Life Ins. Co. of Am., 578 F. 3d 1187, 1192 (10th Cir. 2009).   In this case, the Plan expressly authorizes the Plan Administrator "to interpret and administer the Plan, including the resolution of ambiguities, inconsistencies and omissions" and "to determine benefit eligibility…and to make the initial findings of fact and resolution of disputes or claims."   See Admin Record, 000014.  The Plan also provides for a Benefits Committee that has similar authority and the power to review and resolve disputes or claims which may arise under the Plan, following review and initial resolution by the Plan Administrator.  See Admin Record, 000013.  Thus, under Tenth Circuit precedent and the Administrative Record, there is no question that decisions of the Plan Administrator and the Benefits Committee are subject to the arbitrary and capricious standard of review.

When reviewing under the arbitrary and capricious standard, "[t]he [a]dministrator'[s] decision need not be the only logical one nor even the best one."   Kimber v. Thiokol Corp., 196 F.3d 1092, 1098 (10th Cir. 1990) (citations omitted).   "It need only be sufficiently supported by facts within [his] knowledge to counter a claim that it was arbitrary or capricious."   Id.  The decision will be upheld unless it is "not grounded on any reasonable basis."   Id. (citation

7


omitted).   The reviewing court "need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness—even if on the low end." *Id*.  An administrator's rational interpretation of a plan must be accepted, "even in the face of an equally rational interpretation offered by the participants." *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004).

Moreover, in conducting its review, the Court should keep in mind that "[i]n enacting ERISA, Congress...left employers considerable discretion to fashion private benefit plans tailored to their own (and their employees') needs." *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 804 (10th Cir. 2004).  "Thus, it is necessary to look not just to the minimum standards of ERISA but also to the terms of the plan itself."  *Id*.; *see Broadhead v. Fed. Express Corp.*, No. 205-CV-806 TS, 2007 WL 951544, at *10 (D. Utah Mar. 26, 2007) ("*The terms of the Plan govern; the BRC was not required to make an employability assessment or consider Broadhead's Social Security disability benefits.*") (emphasis added) *Kitterman v. Coventry Health Care of Iowa, Inc.*, 632 F.3d 445, 449 (8th Cir. 2011) ("*[W]hen interpreting the terms of the plan, [a court] cannot ignore provisions or rewrite the plan documents....*") (emphasis added); *Adams v. LTV Steel Mining Co.*, 936 F.2d 368, 371 (8th Cir.1991) ("*[O]ur role is to assure the plan is fairly administered, not to rewrite plan provisions.*"); *Ghorley v. Thomas & Betters Corp. Pension Plan for Bargaining Unit Employees, Part C*, No. 1:13-CV-400, 2014 WL 7014732, at *1 (E.D. Tenn. Dec. 11, 2014) ("At their core, all of Plaintiff's objections rely upon the premise that there must a legal or factual escape hatch from the Plan.  Unfortunately for Plaintiff, *the Court cannot simply ignore the clear and ambiguous terms of the plan simply because it results in the wishes of a dying man not being fulfilled.*") (emphasis added).

Under the express terms of the Plan, a Participant is only eligible for severance benefits if

he or she has all Qualifying Conditions and does not have a Disqualifying Condition. Under the definitions of those and related terms, to have all Qualifying Conditions, the Participant must have received a written Notice of Layoff from Phillips 66 that has been approved by the highest Human Resources manager with responsibility for staffing his or her position. Further, the Participant has a Disqualifying Condition if Phillips 66 records in its personnel system that he or she has been discharged for cause.

Tellingly, the Plan does not state that the Participant need merely have been "laid off" or have experienced a "layoff," leaving the determination of whether that has occurred to the Plan Administrator or the Benefits Committee on review of a claim for benefits. Indeed, it does not even turn on whether the Participant was, in fact, "laid off." Instead, whether that Qualifying Condition has been satisfied turns on whether Phillips 66 (not the Plan) has provided a Notice of Layoff in writing to the Participant.

Such a limitation in the express language of the Plan makes sense. Phillips 66 implemented the Plan to provide severance benefits only to a select group of employees, those to whom it (not the Plan) provides a Notice of Layoff. It did not draft the Plan in such a way as to permit the Plan Administrator or Benefits Committee to second guess whether a layoff has actually occurred. It tied the determination to receipt of a particular piece of paper. Given that Phillips 66 was not obligated to provide a severance benefit plan at all, it was free to craft the terms under which it would offer such a benefit. Thus, for example, where Phillips 66 undergoes a mass layoff or plant closure subject to the Worker Adjustment and Retraining Notification Act of 1988 ("WARN Act"), and provides the statutorily-mandated 60-day notice to affected employees, those employees would meet the Qualifying Condition of having a Notice of Layoff. Likewise, if Phillips 66 has a collective bargaining agreement with a labor union that limits its

9

authority to discharge employees and Phillips 66 issues a notice of layoff to satisfy the terms of the collective bargaining agreement, the Qualifying Condition would again be satisfied.  In contrast, rather than invite a detailed inquiry into the bases for its decision to discharge employees (and to avoid proceedings precisely like this one), where no such specialized circumstances under which Phillips 66 is required to issue such a notice, the Qualifying Condition is met only if Phillips 66 chooses to classify the Participant's discharge as a layoff by providing a written Notice of Layoff.

Similarly, in setting up Disqualifying Conditions, Phillips 66 did not state that a Participant is disqualified if he or she has been discharged for cause, leaving a determination of whether such a discharge has occurred to the Plan Administrator or the Benefits Committee. Instead, it drafted the Plan in such a way as to limit the inquiry to whether Phillips 66 (not the Plan) has recorded in its own personnel system that the Participant has been discharged for cause.

Although the Benefits Committee had authority before remand and had authority after remand "to interpret and administer the Plan including the resolution of ambiguities, inconsistencies and omissions," Admin Record, 000013, it has never had authority to simply ignore the unambiguous terms of the Plan, including the terms stating what constitutes a "Notice of Layoff" or whether the Participant's employment has been "terminated for cause."  And it cannot rewrite those terms because it might believe that Phillips 66 should have issued a "Notice of Layoff" or should not have recorded in its personnel system that a Participant's employment has been "terminated for cause."

It is against this backdrop that Plaintiff's Motion and the Benefits Committee's review of

Plaintiff's claim for benefits must be reviewed.[1]  Notwithstanding Plaintiff's repeated assertions to the contrary, the Benefits Committee did not fail to provide findings or explanations of its benefits determination.  In addition, contrary to Plaintiff's assertions, the Benefits Committee did not determine that Plaintiff had not been laid off or that his employment had been terminated for cause.  Instead, the Plan, relying on the very specific definitions of "Qualifying Condition" and "Disqualifying Condition" outlined above, observed that (1) Phillips 66 had not issued a Notice of Layoff and (2) Phillips 66 had recorded in its personnel system that Plaintiff's employment had been terminated for cause.

Thus, Plaintiff is correct that the Plan "does not identify or refer to any specific conduct of Plaintiff…supporting termination for cause," Pl.'s Mot. Judgment 7, and with good reason: the inquiry called for under the express and unambiguous terms of the Plan is whether a Participant has been "terminated for cause *as indicated by the fact that his termination is recorded in* [*Phillips 66's*] *personnel system as a 'discharge' or similar classification*."  *See* Admin Record, 000009.  Because the termination of Plaintiff's employment "is recorded in [Phillips 66's] personnel system as a discharge or similar classification"—in other words, as something other than a layoff—he necessarily has a "Disqualifying Condition" under the Plan. Quite simply, under the express terms of the Plan, "specific conduct of Plaintiff…supporting termination for cause" and "disputed allegation[s] against Plaintiff of being under the influence of unknown/unidentified substance at mid-year review" are irrelevant.  Phillips 66 did not draft the Plan in such a way as to permit its conclusions on these issues to be questioned by the Benefits Committee.[2]

---

[1] Defendants do not dispute that the Court retains jurisdiction to enforce its judgment following a decision on remand of a benefits determination under ERISA.

[2] Even if the terms of the Plan permitted or required the Committee to ascertain the basis for

The Plan did not defy the Court or its Opinion and Order.  Instead, the Plan took the Court seriously.  The Court's order correctly recognized that there had been prior disputes regarding whether Plaintiff had improved his performance, whether he had demonstrated commitment to ensure timely completion of projects and goals, but a lack of documentation on these points.  *See* Opinion and Order 19, ECF No. 68.  Likewise, the Court noted that the Plan Administrator and the Benefits Committee had cited a prior 2014 performance review of Plaintiff, but had failed to account for the absence of a mid-year 2015 performance review, potentially lending too much weight to the prior review.  *Id.*  Finally, the Court observed that the Plan had not cited record evidence of noncompliance with prior warnings and had failed to address other factual disputes.

On remand, rather than reconsider and weigh the disputed facts on which it had, in part, based its prior determination, the Benefits Committee recognized that its prior reliance on such irrelevant facts was improper under the express terms of the Plan and therefore declined to inquire as to the reasons for Plaintiff's discharge or whether he had been laid off.  Instead, the Benefits Committee, having had another chance to consider how it was obligated to handle Plaintiff's claim for benefits, applied the express and unambiguous terms of the Plan to conclude that Plaintiff was not entitled to severance benefits.

The Plan's decision on remand was anything but a "mechanized response to the review deficiencies identified in the [Court's Opinion and] Order."  Pl.'s Mot. Judgment 12.  Nor is there any indication that the Benefits Committee failed to provide a full and fair review.  Instead,

---

Plaintiff's discharge, the Court has already addressed that issue.  After a full and fair review of the parties' evidence, presented through an adversarial proceeding, the Court concluded that Plaintiff lacks evidence sufficient "to rebut [Phillips 66's] evidence that [Plaintiff] was terminated based on attendance and performance."  Opinion and Order 12, ECF No. 68.  The Plan will not challenge the Court's conclusion that no genuine issue of material fact exists regarding the veracity of Phillips 66's proffered reason for Plaintiff's discharge.

it clearly, concisely, and explicitly addressed the terms of the Plan, the limits of its own authority, the applicable Qualifying Conditions and Disqualifying Conditions, the specific facts that are to be assessed in determining whether those conditions are present, and whether Plaintiff satisfied those conditions.

The cases cited by Plaintiff in support of his request for judgment are inapt.   In *Grossmuller v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW*, 715 F.2d 853 (3rd Cir. 1983), not only was the plan required to make a factual determination regarding whether the plaintiff was still employed, the plan also lacked rules for handling claims. Moreover, the plan "did not state upon what evidence it relied," did not "invite the plaintiff to examine that evidence or to submit written comments or rebuttal documentary evidence," and did not "provide him with any explanation of the factual basis used to support the decision or the manner by which he could challenge it."  *Id*.  Finally, the plan "violated its own past, unwritten practice by allowing a third party…to appear before it, even though it had refused [the plaintiff's] request to do likewise."  *Id*.  No similar circumstances are present here.

In *Govindarajan v. FMC Corp.*, 932 F.2d 634 (7th Cir. 1991), the issue involved a fact-bound determination regarding when the plaintiff's disability ended and whether he was therefore entitled to short-term and long-term disability benefits, *id*. at 635-36, but the plan failed to review all relevant factual evidence.  In this case, no such factual determination is permissible under the express terms of the Plan.

In *Richardson v. Cent. States, Se. & Sw. Areas Pension Fund*, 645 F.2d 660 (8th Cir. 1981), the decisions by the plan were memorialized in form letters and were "wholly conclusory…recit[ing] neither the facts of the case nor the rationale supporting their judgment." *Id*. at 664-65.  It was this absence of any reasoning that the Eighth Circuit deemed "a smoke

13

screen to shield [the plan] from legitimate claims." *Id*. at 665.  The same circumstances are not present in this case, in which the Benefits Committee stated its decision and the bases thereof, including the clear and unambiguous language of the Plan, openly.

Finally, neither *West v. Aetna Life Ins. Co.*, 2018 U.S. Dist. LEXIS 23765 (D. Colo. Feb. 14, 2018), nor *Leffler v. Aetna Life Ins. Co.*, 2017 U.S. Dist. LEXIS 130753 (N. Dist. Okla., June 13, 2017), involved a remand to the plan for further proceedings, much less automatic entry of judgment after the plaintiff received a second denial of benefits following remand.  Accordingly, neither case supports Plaintiff's request for judgment in his favor here, in the absence of further proceedings and a new briefing schedule.  Regardless, for the reasons set forth above, as well as those set forth in the Benefits Committee's letter of March 2, 2018, the Court should uphold the Plan's decision denying benefits to Plaintiff and deny Plaintiff's Motion.

## CONCLUSION

For the reasons set forth above, the Plan respectfully request that the Court deny Plaintiff's Motion for Judgment or Motion to Re-Open Cause for Entry of Judgment Awarding Benefits.

Respectfully submitted,

**HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.**

s/Steven A. Broussard, OBA #12582
320 South Boston Avenue, Suite 200
Tulsa, OK  74103-3706
Telephone:  (918) 594-0400
Facsimile:  (918) 594-0505
Email:  sbroussard@hallestill.com

**ATTORNEYS FOR DEFENDANT,
PHILLIPS 66 SEVERANCE PAY PLAN**

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of May, 2016, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the Following ECF registrants:

Jeff A. Taylor
Chadwick & Taylor
5613 N. Classen Blvd.
Oklahoma City, Oklahoma 73118

s/ Steven A. Broussard

3529378.1:711551:01887
5/4/18

15